UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-00063-FDW

| | |
|---|---|
| NAPOLEON CURTAIN, ) ) Claimant, ) ) vs. ) ) COMMISSIONER OF SOCIAL SECURITY, ) ) Defendant. ) ) | ORDER |

THIS MATTER is before the Court on Claimant Napoleon Curtain's ("Claimant") Motion for Summary Judgment and Memorandum in Support (Doc. Nos. 9, 10), filed July 12, 2022; Defendant Acting Commissioner of Social Security's (the "Commissioner") Motion for Summary Judgment and Memorandum in Support (Doc. Nos. 11, 12), filed August 3, 2022; and Claimant's Response to Defendant's Motion for Summary Judgment (Doc. No. 14), filed August 23, 2022. Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on his appeal for Supplemental Security Income.

The motions are fully briefed and are now ripe for review. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Claimant's Motion for Summary Judgment is GRANTED; the Commissioner's Motion for Summary Judgment is DENIED; and the Commissioner's decision is REMANDED.

## I. BACKGROUND

On January 8, 2020, Claimant filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning April 1, 2012. (Tr. 10). After his application was denied initially and upon reconsideration, Claimant requested a hearing by an

1

Administrative Law Judge ("ALJ"). The ALJ held a hearing on May 6, 2021, after which the ALJ issued an unfavorable decision on May 26, 2021, finding Claimant not disabled under the Social Security Act. (Tr. 10–29).

During the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, the ALJ found at step one that Claimant has not engaged in substantial gainful activity since April 1, 2012. (Tr. 12). At step two, the ALJ found Claimant to have the following severe impairments: "diabetes mellitus; obesity; degenerative disc disease of the cervical and lumbar spine; history of bilateral rotator cuff surgeries; and mild bilateral osteoarthritis of the knees." (Tr. 13). Assessing step three, the ALJ determined none of Claimant's impairments, nor any combination thereof, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). Before proceeding to step four, the ALJ found Claimant:

> [H]ad the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he is limited to frequently climbing ramps and stairs; occasionally climbing ladders but not ropes or scaffolds; frequent stopping; and occasionally kneeling, crouching and crawling. He should never perform overhead reaching but would be able to frequently reach in other directions with the bilateral extremities; and frequently handle and finger bilaterally. He is to avoid exposure to hazardous work tasks, such work at unprotected heights or with or near automated moving machinery; and avoid word tasks involving concentrated occupational exposures to dust, toxic or caustic odors and fumes as well as extremely hot, cold or humid working environments.

(Tr. 16). The ALJ determined at step four that Claimant's self-employed work as the owner of a bar constituted substantial gainful activity under the second work comparability test outlined in 20 C.F.R. § 404.1575(a)(2)(ii). Additionally, the ALJ found Claimant could perform past relevant work as a manager of a liquor establishment, and that this work did not require the performance of work-related activities precluded by Claimant's RFC. (Tr. 26).

Evaluating step five, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity ("RFC"). (Tr. 28). The VE testified that, given those factors, Claimant "would be able to perform past relevant work as a Manager, Liquor Establishment both as performed according to DOT and as actually performed by the claimant." Id. Thus, the ALJ concluded Claimant was not disabled as defined by the Social Security Act from April 1, 2012, through December 31, 2019, the date last insured. (Tr. 29).

Claimant's subsequent request for review by the Appeals Council was denied, and as a result, the ALJ's decision became the final decision of the Commissioner. (Tr. 1–3). Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richard v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.2d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her

4

physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotation marks omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1566, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

5

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

Claimant identifies two assignments of error on appeal: (1) the Acting Commissioner Berryhill lacked statutory authority under the Federal Vacancy Reform Act ("FVRA") to ratify the appointment of Social Security Administration ("SSA") ALJs in 2018;[1] and (2) the ALJ inconsistently found Claimant's past work as a bar owner to not constitute substantial gainful activity at step one, but then found it to be substantial gainful activity at step four. For the reasons discussed below, the Court disagrees with Claimant as to assignment one of error and finds it without merit. The Court does, however, agree with Claimant as to assignment two of error.

**A. Constitutionality of Ms. Berryhill's Appointment and Ratification**

Claimant argues that then-Acting Commissioner Berryhill was not properly acting under the FVRA when she ratified the appointment of the ALJ in this case because her tenure had expired, such that the ratification of the ALJ was ineffective. Claimant urges the Court to rely on Brian T.D. v. Kijakazi, 580 F.Supp.3d 615 (D. Minn. Jan. 20, 2022), *rev'd sub nom.* Dahle v. Kijakazi, No. 22-1601, 2023 WL 2379383 (8th Cir. Mar. 7, 2023), in which a district court concluded Ms. Berryhill could not serve as Acting Commissioner during the pendency of Mr. Saul's nomination because the initial 210-day acting service period lapsed before the submission

---

[1] During the discussion of the FVRA, Claimant also challenges, pursuant to the Appointment Clause, Acting Commissioner Berryhill's ratification of the appointment of the ALJ in this case. However, in light of the Fourth Circuit's recent ruling in Brooks v. Kijakazi, and for the reasons cited therein, this argument fails. Brooks v. Kajakazi, No. 21-2048, at *12–13 (4th Cir. Feb. 22, 2023) (finding that the ALJ's second denial of benefits in 2019 was lawful since she was "properly appointed to her position by virtue of the Commissioner's 2018 ratification," but remanding because the ALJ's initial denial in 2018 was flawed and Lucia v. SEC, 138 S.Ct. 2044 (2018), requires a new hearing to cure the initial constitutional error). Here, the appointment of the ALJ was properly ratified when he denied Claimant's disability benefits claim in 2021. Brooks, No. 21-2048, at *12–13; see also Taylor v. Kijakazi, No. 1:21CV648, 2022 WL 4668273, at *12 (M.D.N.C. Aug. 2, 2022).

of his nomination in April 2018. Thus, the district court found Ms. Berryhill could not lawfully ratify and approve the appointments of SSA ALJs as her own.

However, the Court disagrees with the Minnesota district court's interpretation of the FVRA, instead finding persuasive the interpretation and substantial analysis of other judges from this Court and Circuit.² Furthermore, since the filing of Claimant's motion, the Eighth Circuit reversed the Minnesota district court's ruling and held "[t]he test and legislative history show the intent of the legislative branch was to allow an individual to serve noncontinuously under subsections 1 and 2 [of § 3346(a)]." Dahle, 2023 WL 2379383, at *3. The Court adopts and incorporates the reasoning of a fellow judge in this District Court addressing the same constitutional challenge to Ms. Berryhill's appointment as Acting Commissioner and her ratification of the SSA ALJs as her own. Williams v. Kijakazi, No. 1:21-CV-141, 2022 WL 2163008, at *2–4 (W.D.N.C. June 15, 2022) (unpublished) (finding the plain text of the FVRA, the view of the Executive Branch, and the view of the Legislative Branch all agree "§ 3346(a)(2) permits an acting official serving under the FVRA to serve during the pendency of a first or second nomination even when that nomination was submitted after the initial 210-day period for acting service has expired").

The Court is persuaded that Claimant's argument is without merit. Therefore, the final decision of the ALJ is not constitutionally defective.

---

² See, e.g., Williams v. Kijakazi, No. 1:21-CV-141, 2022 WL 2163008, at *2–4 (W.D.N.C. June 15, 2022); Taylor v. Kijakazi, No. 1:21-CV-648, 2022 WL 4668273, at *9, (M.D.N.C. Aug. 2, 2022); Black v. Kijakazi, No. 1:21-CV-322, 2022 WL 2977340, at *3 (W.D.N.C. July 27, 2022); Edwards v. Comm'r of Social Sec., No. 1:21-CV-00134, 2022 WL 3352298, at *4 (W.D.N.C); Call v. Comm'r of Social Sec., No. 5:21-CV-00145, 2023 WL 1093670, at *5 (W.D.N.C. Jan. 10, 2023); Stanley v. Kijakazi, No. 1:22-CV-43, 2023 WL 318581, at *12 (M.D.N.C. Jan. 29, 2023); Allison v. Kijakazi, No. 1:21-CV-890, 2023 WL 143201, at *12 (M.D.N.C. Jan. 10, 2023); Huntsinger v. Comm'r of Social Sec., No. 1:21-CV-00267, 2023 WL 1456187, at *4 (W.D.N.C. Jan. 4, 2023); Brooks v. Kijakazi, No. 1:21-CV-609, 2022 WL 2834345, at *16 (M.D.N.C. July 20, 2022); Donta J. v. Saul, No. 2:20-CV-131, 2021 WL 3705145, at *7 (E.D. Va. Apr. 2, 2021), adopted by 2021 WL 2711467 (E.D. Va. July 1, 2021); Taylor v. Saul, No. 1:16-CV-00044, 2019 WL 1055098, at *4 (W.D. Va. Aug. 15, 2019).

## B. SUBSTAINTIAL GAINFUL ACTIVITY

Claimant next argues the ALJ misapplied the regulations governing whether Claimant's self-employment income qualified as substantial gainful activity.[3] The initial consideration at step one of the five-step evaluation for determining a claimant's disability is whether he is engaged in substantial gainful activity, defined as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity involves "significant physical or mental activities" including part-time work and work that pays less or involves fewer responsibilities than previous work. Id. § 416.972(a). "Gainful" work activity is "usually done for pay or profit." Id. § 416.972(b).

For a self-employed claimant, the determination of whether work activity amounts to substantial gainful activity must be evaluated under 20 C.F.R. § 404.1575, which provides three tests. Id. § 404.1575(a)(2)(i)-(iii); see also SSR 83-34, 1983 WL 31256 (Jan. 1, 1983). Each of these three tests "must be considered before it can be established that the self-employed person is not or was not engaged in [substantial gainful activity]." SSR 83-34, 1983 WL 31256, at *2 (Jan. 1, 1983). The tests are as follows:

> (i) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
>
> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

---

[3] While Claimant does not expressly contest the ALJ's application of 20 C.F.R. § 1575, Claimant's arguments regarding the ALJ's inconsistent findings of substantial gainful activity, including the ALJ's alleged insufficient analysis, are all rooted in the ALJ's application of the above-named regulation. As discussed above, it is within this Court's review power to assess the ALJ's application of legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2). If the claimant has not engaged in substantial gainful activity under Test One, then the ALJ will consider Tests Two and Three. Id. It is essential under all three tests "that the evidence show not only what the individual's activities have been since the alleged date of disability onset, but also how such activities compare with those he or she performed before the date." SSR 83-34, 1983 WL 31256, at *2 (Jan. 1, 1983).

Here, as noted above, at step one the ALJ found that Claimant had "not engage[d] in substantial gainful activity during the period from his alleged onset date of April 1, 2012 through his date last insured of December 31, 2019." (Tr. 12). In reaching this conclusion, the ALJ clearly stated Claimant's work as the owner of a bar for seven years after the alleged onset of disability "satisfies the comparability of work activity test for constituting substantial gainful activity." (Tr. 13). While the ALJ applied the full sequential evaluation process and discussed his analysis of the comparability tests under step four, the ALJ explained at step one that an unfavorable outcome would have been reached "regardless of the claimant's substantial gainful activity." Id. At step four, the ALJ attempted to apply the comparability tests under 20 C.F.R. § 404.1575(a)(2) to evaluate Claimant's self-employment as potential substantial gainful activity. (Tr. 26–28). Though the ALJ concluded Claimant's "work activity as a Manager, Liquor Establishment satisfies the comparability of work activity [] test and amounts to substantial gainful activity", (Tr. 27–28), the ALJ's analysis is insufficient.[4]

---

[4] The Court recognizes the Fourth Circuit, on occasion, will address additional assignments of error notwithstanding an order to remand. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (noting that "[n]ormally, our opinion would end here, and we would not go beyond ordering the ALJ to apply the regulation that it failed to observe;" but then summarily directing the ALJ to provide a more detailed explanation as to other errors

9

Test One requires a two-part finding: a claimant renders services that are significant to the operation *and* a claimant receives substantial income from the business. 20 C.F.R. § 404.1574(a)(2)(i) (emphasis added). In assessing whether Claimant received substantial income from ownership of the bar, the ALJ reviewed Claimant's Work History report, including financial assistance Claimant received from family members to operate the bar, and Claimant's earning record, which indicated Claimant earned "only $5,976.59 in 2013, $3,553.00 in 2015, and $3,027.00 in 2017." (Tr. 27). While the ALJ's assessment of Claimant's work history and earnings record may begin to address the question of whether Claimant gained substantial income from owning the bar,[5] the ALJ failed to evaluate how Claimant's countable income compared to that reflected in the Substantial Gainful Activity Earnings Guidelines, how Claimant's income from the bar compared to what Claimant made prior to becoming disabled, or how Claimant's earnings compared to an unimpaired self-employed bar owner. As for the Test One determination regarding whether the services Claimant rendered were significant to the bar's operation, the ALJ needed to determine whether Claimant "contribute[d] more than half the total time required for management of the business, or render[ed] management services for more than 45 hours a month regardless of the total management time required by the business." SSR 83-34, 1983 WL 31256, at *3 (Jan. 1, 1983). While the ALJ provides some discussion of the hours Claimant contributed to the bar, it

---

"in the interests of judicial efficiency . . . ."); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012) (citing Sharpe v. Dir., Office of Workers' Comp. Programs, 495 F.3d 125, 134 n.16 (4th Cir. 2007) (providing instructions for ALJ to follow on remand regarding issues not dispositive on appeal); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) ("Since the case must be reconsidered by the Secretary, we do provide some guidance as to a matter very likely to arise at the hearing which will occur.")). However, the Court declines to address whether it was inconsistent or improper for the ALJ to conclude Claimant did not engage in substantial gainful activity at step one, but then conclude at step four that Claimant's work as a bar owner was substantial gainful activity. (Tr. 12–13, 27–28).

[5] A full analysis of the income a self-employed claimant receives from their business would include a comparison between the average "countable income" gained from the business per month and the amount shown for the respective calendar year in the Substantial Gainful Activity Earnings Guidelines. SSR 83-34, 1983 WL 31256, at *4 (Jan. 1, 1983). If the "countable income" does not average more than the amount in the Guidelines, the claimant's livelihood derived from the business should be compared to what the claimant had before becoming disabled or "that of unimpaired self-employed individuals in his or her community engaged in the same or similar businesses." Id.

10

Case 3:22-cv-00063-FDW   Document 15   Filed 03/27/23   Page 10 of 13

was in his application of Test Two and not part of the requisite Test One. (Tr. 27). Thus, the ALJ failed to properly apply Test One.

Under Test Two, the ALJ must determine whether Claimant's work activity was comparable to that of unimpaired individuals in the same community engaged in the same business. 20 C.F.R. § 404.1574(a)(2)(ii). SSR 83-34 provides that "[d]evelopment must be specific" with each work factor described in detail to show contribution to the business operation, and "[g]eneral descriptions are considered inconclusive evidence for the point-by-point comparison that is required." SSR 83-34, 1983 WL 31256, at *9 (Jan. 1, 1983). In assessing Claimant's work activity as owner of the bar, the ALJ found Claimant's work to satisfy the comparability test and amount to substantial gainful activity. (Tr. 27–28). Noting Claimant's testimony that his job duties included "playing the music at the bar, making business decisions, coordinating business activities, and handling all of the accounting, inventory, and bookkeeping associated with the business", the ALJ determined Claimant "demonstrated comparable skills, duties and responsibilities" to "a full time Manager, Liquor Establishment." (Tr. 27). The ALJ also pointed to Claimant's testimony that he "spent seven total hours per day working on his business", finding it comparable to the hours worked by a full-time manager of a bar. Id. However, in reaching these conclusions, the ALJ did not discuss any specific information about unimpaired individuals in similar businesses in Claimant's community. At most, the ALJ's opinion includes the exact "general description" SSR 83-34 prohibits while remaining devoid of any comparison between Claimant and a group of unimpaired persons of similar self-employment. Accordingly, substantial evidence does not support the ALJ's conclusion that Claimant engaged in substantial gainful activity under Test Two.

11

Case 3:22-cv-00063-FDW   Document 15   Filed 03/27/23   Page 11 of 13

For Test Three, the ALJ must determine whether Claimant's work as a bar owner, if not comparable to that of unimpaired persons of similar self-employment, was nevertheless worth more than the yearly amount indicated on the Substantial Gainful Activity Guidelines considering the benefit to the business or the standard salary for such duties. 20 C.F.R. § 404.1574(a)(2)(iii). As stated above, all three tests must be considered before determining whether a self-employed individual engaged in substantial gainful activity. SSR 83-34, 1983 WL 31256, at *2 (Jan. 1, 1983). However, the ALJ did not conduct any analysis to determine what Claimant's work activity was worth either in terms of value to the bar or when compared to what an employee would be paid for similar work. Therefore, the record provides insufficient evidence to determine whether Claimant engaged in substantial gainful activity under Test Three.

The Court finds the ALJ incorrectly applied the three comparability of work activity tests from 20 C.F.R. § 404.1575(a)(2)(i)-(iii). Because the ALJ failed to apply the correct legal standard, the record provides insufficient evidence to support the ALJ's findings. Therefore, the Court REMANDS this case for further proceedings consistent with this Order.

## IV. CONCLUSION

The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405 (g), the Court does not take a position on the merits of Claimant's application for disability benefits. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)). The Court notes that remand provides the opportunity for the ALJ to modify any prior basis for the prior decision in the new decision issued upon remand. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,'

12

Case 3:22-cv-00063-FDW   Document 15   Filed 03/27/23   Page 12 of 13

and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." Shalala v. Schaefer, 509 U.S. 292, 299 (1993) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 624–25 (1990)).

IT IS THEREFORE ORDERED that Claimant's Motion for Summary Judgment, (Doc. No. 9), is GRANTED; the Commissioner's Motion for Summary Judgment, (Doc. No. 11), is DENIED; and the ALJ's determination is REMANDED to the Commissioner for further proceedings consistent with this ORDER.

IT IS SO ORDERED.

Signed: March 27, 2023

Frank D. Whitney
United States District Judge